The next case in our call is Agenda No. 8, 109014, People of the State of Illinois v. E. L. O. Sanders, Appellant. Mr. Stone, you may proceed to keep things quiet down just a little bit. Morning, Your Honors. May it please the Court, my name is Randolph Stone, representing Defendant Appellant Italo Sanders from the Mandela Legal Aid Clinic. This case involves the substantive issue of the right to a fair trial in an impartial jury. More specifically in the context of this case, it's whether the trial court, by refusing to ask any questions of the jury and voir dire about gang bias, deprived the judge's right to a fair and impartial jury. In addition, of course, there are the procedural issues of race judicata, retroactivity, and timeliness. Briefly, three months after a shooting in public housing, Italo Sanders, who was 16 at the time, was charged and arrested with murder. The day before his trial, two years after his arrest, the state announced for the first time its intent to introduce a statement, allegedly made by Sanders to the victim's brother some days after the shooting, that the shooting was BD business. BD defined as the Black Disciples, the street gang in Chicago. The defense objected on a variety of grounds. The objection was overruled. The defense then requested of the trial court that if this evidence was going to be used, that the trial court voir dire the jury and submitted six questions related to gang evidence and gang bias. The trial judge denied the request and noting that he didn't think it was relevant. Counsel, this trial predated Strain. Yes, it did. It was in, what, 94? It was in 94, exactly. And Strain came down in 2000. That's correct. And had the direct appeal been completed by the time Strain came down? Yes, that's correct. After a three-day trial, the only direct evidence was a single eyewitness who was seven years old at the time, who the appellate court on direct appeal noted could only have a glimpse of the shooter. And on the other side, there were three witnesses who testified that the defendant was with them in his apartment at the time of the shooting. So the gang evidence was used to provide the motive for an otherwise inexplicable shooting. And the context allowed the state to argue admission, identity, and bolster the credibility of the single eyewitness. The defendant was convicted, sentenced to 40 years. On direct appeal, the court noted that the evidence was not overwhelming, that it was a close case. The conviction was affirmed. In the appeal, Sanders raised the issue of Wadeer regarding gang bias. Later, as the justice indicated, People v. Strain is decided in November of 2000, rehearing denied January 2001, on the precise issue of ensuring an impartial jury through Wadeer based on gang evidence. November 2001, Sanders files his post-conviction petition. Prior to Strain, it was up to the individual judge to sue the gang bias. That's correct. After Strain changed that to no discretion. Well, I think Strain changed it to that where evidence of gang bias is integral to the case, the trial judge should Wadeer the jury regarding that issue. Isn't that a new rule? No. Most respectfully, we would say no, Judge. It's not a new rule of constitutional procedure as envisioned by Teague v. Lane, in our opinion. In our opinion, the rule in Strain was based on constitutional principles that were longstanding in Illinois regarding the responsibility of a trial judge to ensure a fair and impartial jury and to Wadeer the jury on issues. It goes back to People v. Law from 1959. So in our view, what the court did in Strain was take the trend of the law regarding Wadeer of a jury, 50 years old or more, look at the law regarding gang bias that was some 10 years in the making regarding the court's recognition of the deep hatred of gangs and applied those two strands of law to a fact situation that it was presented with. I would not characterize it as a new rule of constitutional procedure. That's because Teague would require for there to be a collateral attack, a watershed issue to be unveiled. Exactly. And it's not happened here. No. Mr. Stone? Oh, I'm sorry. Can you tell me how you justify the collateral attack in this case? I think because most respectfully, Your Honor, if Strain is not characterized as a new rule, then it would have retroactive effect under Moore. And if you look at People v. Moore, an Illinois Supreme Court case from 1997, I believe, the court said in Moore that a change in the law can occur where the court merely applies existing precedent to an analogous set of facts. And we would argue that that's exactly what the court did in Strain. It took existing precedent, applied it to a set of facts, not creating a brand-new rule under Teague v. Lane. Mr. Stone, how, if at all, is your analysis as to retroactivity impacted by our recent decision in People v. Morris? I have reviewed Morris, Judge. And in my opinion, I think Morris was characterized as a new rule because of the two reasons. One, it changed the practice of the courts. And two, it provided a sort of a novel remedy in the context of mandatory supervisory release, where it allowed the court to fashion this remedy of subtracting the years from the sentence. So in that sense, the remedy provided in Morris was relatively dramatic. And the change in practice was dramatic. In this case, in Strain, there was not a, if you look at the history of cases coming before the court, I believe that Strain was the first decision to actually deal with this issue at the Supreme Court level. Because the practice in trial courts and in appellate, even the appellate decisions, as noted in the minutes, was for trial judges to ask this question. If there was gang evidence presented at the trial, most trial judges, in my experience, during that period of time, if you asked a trial judge to why die the jury, they would why die the jury, ask a couple questions, to ensure that there was no lurking prejudice regarding gangs that would affect the verdict. So Strain did not change practice. I think what Strain did was bring in a couple or some outlier judges who were refusing to ask questions about gang violence. So that's how it would distinguish the two cases. And maybe you've already done this, but the specific analysis of Morris that when a case announces a new rule, if the new result was not dictated by precedent existing at the time the defendant's conviction became final, do you feel that your position squares with that portion of Morris? Actually, we do, Your Honor, because in 1996, I believe, People v. Jimenez was decided by the Illinois Appellate Court. And People v. Jimenez stood for the principle that in gang cases the judge should voir dire. In fact, it reversed the conviction. The Supreme Court in Strain merely affirmed the appellate court in Strain. It didn't reverse any opinions. And there was not a disagreement in the courts as to how voir dire should be conducted as it related to gang bias. So to that extent, I think there's a difference between Strain and Morris. And last question for me on Morris, at least. Morris further held that the fact that a court states that its decision is within the logical compass of an earlier decision or is controlled by a prior decision is not conclusive for purposes of deciding whether the current decision is a new rule. And we have no objection to that statement. We think that fact alone is not dispositive, but the court must look in context. Thank you. Thank you, Justice. Mr. Stone, don't you believe that the procedural hurdle must be satisfied before the merits of the petition may be considered? Well, if you look at the history of this case, the trial court, and by the way, it was a different trial judge who heard the PC petition than the trial judge who heard the actual trial. But the trial judge decided the case on the merits, stating that, in her opinion, the level of gang evidence involved in the case did not amount to integral nature at first strain, and decided the procedural issues ultimately in favor of the defendant. When we get to the appeal, the appellate court decided not to deal with the merits but instead to focus on procedure. So I suppose you do have to decide the procedural issues, but we would urge the court to also look at the merits of the matter, because we think in this case, this particular case, the gang evidence was integral to the trial. In fact, the state used the gang evidence, as I indicated, to provide for motive, to show identity, to argue credibility of witnesses, and it was a close case. It was not an overwhelming case, as the appellate court noted. So we feel that that gang evidence really tipped the scale. While you're looking for your next issue, let me just ask you this. I would imagine that somewhere along the line the floodgate effect will probably come up. What consideration, what level of consideration to the court, to this court, give to that effect? If it is, in fact, will be an effect? Well, we would submit, Your Honor, that the floodgate effect has been highly overrated in the context of this case. As the court is aware, strain was decided in 2000, 10 years ago, and there's been no floodgate. Gardner was decided in 2002, eight years ago. Gardner is the case that held that strain was retroactive, no floodgate. So I think the idea that somehow there's going to be a floodgate of litigation related to this issue, it hasn't occurred to this point, 10 years after strain. It hasn't occurred eight years after Gardner, which held that strain was retroactive, contrary to the decision in Sanders that we are facing today. So my position would be that this idea of floodgates is vastly overrated. And, in fact, it hasn't occurred. The simple fact of the matter is that most good trial judges, in my experience, when gang evidence is being talked about or proposed to be introduced in a trial, will automatically draw by the jury about that issue, because they realize it's a hot button, controversial issue in most urban communities. And that's why you haven't seen that many cases on that issue surface, because it's handled at the trial court. In this particular case, I think we had a judge who, for some reason, didn't think it was important to void the other jury on this particular issue. And that's why we're here today. The other point, I guess, that the Sixth Division, the First Appellate Division District, Sixth Division makes, in its opinion, is the standard for timeliness. And I would simply say that they just applied the wrong standard. They applied the standard of cause and prejudice, which clearly, per the statute, post-conviction statute, does not apply to the first post-conviction petition that is filed in this state. The proper standard, of course, is culpable negligence. Has the state conceded that point? I'm not sure. I hope they have, but I'm not really sure whether they've conceded it or not. The proper standard, though, is culpable negligence. And the state asks you to reverse the appellate court decisions from three different districts, people versus Gardner in the first district, people versus Hernandez in the second district, and people versus Wilburn in the third district, all standing for the proposition that a defendant is not culpably negligent, where there has been an evolution of law announced in the new Illinois Supreme Court case. So clearly, at least we feel confident, unless the court is inclined to reverse Gardner, Hernandez, and Wilburn, as well as people versus Moore, on the procedural issues, we feel that the defendant has a good case. And in addition, we think that if the court looks at the merits, the substantive issue, regarding the integral nature of the gang evidence in this particular case, it can't help but conclude that the defendant was not provided a fair trial. On your timeliness analysis, counsel, are you telling us that a defendant can wait until there's a favorable decision on down the road and then argue, as your defendant has here, that an earlier petition would have been futile? I don't think a defendant can wait indefinitely. But under the law as under Gardner, Hernandez, and Wilburn, the defendant filed his petition 16 months after the new decision. And the third district said that that was not culpable negligence. So I think the court can determine or decide what the cutoff point is. And no, I don't think a defendant should be allowed to wait indefinitely.  About 12 months after, well, it was 12 months after Strain. It was actually filed before Gardner, was before the Gardner opinion. Mr. Stone, how do you address the State's argument that you argue, on the one hand, that Strain did not announce a new rule for purposes of retroactivity, but also argue that Strain actually changed the law, allowing the petition to withstand res judicata analysis? I think what our argument is based on the case law of the State of Illinois, that, in fact, per T, the way T categorizes a new law, Strain does not meet that test as being a new law of constitutional criminal procedure, which is the phrase that Teague uses. I don't think the Strain decision reaches that level. And I think that based on the case law regarding relaxation of res judicata,  in this part T case law of this State, res judicata is relaxed in some instances when a new decision is announced by this court. And I think that's how we fit under those two seemingly differential standards. The standard is much higher. Your Honor? The standard of retroactivity is much more limited. Under the Teague analysis, because that's when you run into the watershed. I agree with you 100%. If this court determines that Strain announced a new rule of constitutional criminal procedure per Teague, we would not fit under either of the two exceptions that Teague provides. That, I would concede that point, Judge. Our position is that Strain does not announce a new rule of constitutional criminal procedure, and therefore the Teague analysis is inapplicable. In conclusion, I would say that when a trial judge declines or fails to ensure the right of a defendant to a fair trial before fair and impartial jurors, our judicial system falls short and the integrity of the judicial process is questioned. And to paraphrase the court in Jimenez, even an alleged gang member has a constitutional right to have his case determined on the basis of his guilt or innocence by a jury that is not predisposed to find his guilt solely because of his alleged gang affiliation. Thank you. Good morning, Chief Justice. Your Honors, may it please this Court, my name is Annette Collins. I'm an Assistant State's Attorney from Cook County. I represent the people of the State of Illinois in the matter before this Court. Defendant committed this murder in 1992. He was tried in 1994. His direct appeals were exhausted when this Court denied his PLA in 1997. If he had wanted to file a postconviction petition raising the very same claim that he had raised in the trial court on appeal and before this Court earlier, he could have filed that postconviction petition, which was due before May 1997. He chose not to. He opted to go the habeas route, but he was denied relief there as well. By his own admission, he filed an untimely petition in November of 2001 for the sole purpose of capitalizing on this Court's 2000 decision in People v. Strain issued one year before he filed his untimely postconviction petition. Because of these precise factual circumstances facing the defendant in this case, for him to get any relief from the Strain decision, he must argue two things. He must argue that Strain is not new, such that it will apply retroactively to his 1994 conviction. But he must also at this very same time argue that People v. Strain was new enough to occasion a change in the law, justifying the relaxation of preclusion doctrines of timeliness and also res judicata. But defendant's argument is internally irreconcilable, because Strain is either new or it's not new. And it can't be both, depending on the shifting issues to suit defendant's purpose. Defendant derives his argument from one single case from the first district, People v. Gardner. It is our position that People v. Gardner is analytically unsound, and the appellate court below correctly rejected the analysis contained therein. There are multiple independent bases why defendant's postconviction petition was denied in this case, and I'd like to address each one, beginning with retroactivity. But I would also like to, assuming that Strain is even retroactive, address the timeliness and res judicata bars that exist in this case. And equally, if there's time remaining, I'd like to briefly address why this is not even a Strain case, even if that case applies to the instant set of facts. The instant set of facts does not involve a case where the gang evidence was integral to trial. Counsel, first of all, with regard to the untimeliness, which standard are you opposing, the cause and prejudice standard or the culpable negligence standard to determine the timeliness? Culpable negligence, Your Honor. That is what the statute says. That is what we have to follow. I do understand the appellate court below's analysis with respect to cause and prejudice. It was sensible and it was logical. But, however, the statute says culpable negligence and cause and prejudice only for successive petitions, but culpable negligence for untimely petitions. So that is the standard that we are accepting. Though, under whatever. Did you argue that in your brief? Pardon me? Did you make that argument in your brief? Yes. You know, we did. We argued that we understand that the appellate court below put forth the cause and prejudice analysis, but the statute says culpable negligence. So that is the standard that the legislature has chosen. Irrespective of the wisdom of that standard, that is the standard that has to be applied. But we did address both the fact that defendant's petition meets neither cause and prejudice nor culpable negligence for purposes of timeliness. As to retroactivity, this court has recently reaffirmed its adoption of the principles expressed in Teague v. Lane and has made clear that cases which announce new rules of constitutional procedure, those cases cannot apply retroactively to cases on collateral review. The only exception is exceedingly narrow, and defendant has conceded that that exception does not apply. Defendant argues that strain is not a new case. He's wrong, and the appellate court below was correct to find that it did indeed announce a new rule. Strain announced a new rule when it mandated for the first time gang bias voir dire in certain cases. Prior to strain, the only mandated areas for voir dire concerned controversial legal topics. The insanity defense in cases involving that defense, the death penalty and jurors' views on that in capital cases, abortion cases, dram shop cases, liquor law violation cases. This court had said prior to the issuance of strain in multiple decisions that the purpose of voir dire is not to ascertain opinions with respect to evidence at trial. But that's exactly what strain mandated in the case of gang evidence integral to trial. This court has recognized, again, most recently in Morrison v. Holbrook case, that an announcement from this court is a new rule if the result was not dictated by precedent existing at the time. Or if prior to the rules being established there was a significant difference of opinion. Both these conditions obtained in this case, there was absolutely no precedent prior to strain requiring gang bias voir dire. As opposing counsel so eloquently stated, strain took two areas of law, voir dire and, of course, gang evidence, and coalesced them for purposes of voir dire in this case. And that is what makes strain a new rule. There was absolutely no precedent requiring that decision. Likewise, there was no watershed change. No, it is not. And defendant concedes that. And it is a significant rule, but it does not constitute the type of Gideon rule that would bear the characterization of watershed. Counsel, I have to get back to the standard for culpable negligence. Doesn't culpable negligence permit a petition outside the statutory window if the delay was not due to the defendant's culpable negligence? Absolutely, Your Honor. We certainly don't dispute that. And turning to that, in this case, by defendant's own admission, he chose not to file a postconviction petition in the time period. There is nothing that he's alleged that actually impeded his ability to file a postconviction petition. By looking to the Gardner analysis, he's implicitly acknowledging that his choice not to file a postconviction petition was simply due based on his belief that it might not have been successful. But that's not actually in accord with the remainder of his argument. Because if he's right and strain didn't announce a new rule, but yet there was available law at the time, he most certainly could have filed a postconviction petition. But if he's right and strain didn't announce a new rule, but yet there was available law at the time, he most certainly could have filed a postconviction petition. But that's where defendant's argument doesn't fit together between retroactivity and timeliness and res judicata bars. In this case, there was nothing impeding defendant's ability to file a timely petition. And for that reason, he hasn't met the culpable negligence standard. Your Honors, I know that my opposing counsel indicated that there is not a parade of horrors in this case, because none has happened yet. There actually is a parade of horrors. It hasn't happened yet, not for lack of trying on the defendant's parts. They have been citing people versus Gardner. They have been arguing for not just the retroactive application of changes and evolutions in the law, but also using those same laws to lift the res judicata bar and the culpable negligence. The parade of horrors hasn't yet happened in terms of decisional case law, because like the appellate court below, the courts have not been rejecting that case. Courts have been actually rejecting it. And in fact, it hasn't been confined to strain type arguments. Although Gardner valiantly tried to narrow that decision's application to only the very, very specific facts of that case, defendants have been using that case to try to attack or use retroactively other decisions. In fact, prior to this court's pronouncement in Morris v. Holborough, defendants were arguing that Whitfield didn't announce a new rule, but also represented a change in the law sufficient to lift the res judicata bar and establish a lack of culpable negligence. If this court accepts the paradigm as defendant presents it and as the Gardner court created, what that will do is open the floodgates, because it won't just apply to a strain type case. It will apply to all cases where defendants can claim that it's a change, not a new law, but it's a change in the law that's freighted with the power of a new law to excuse an untimely petition and to lift a res judicata bar. There's a couple of decisions that defendant mentioned, People v. Hernandez, and also I believe it was People v. Wilborne that he claims that we're arguing have to be overruled. Those cases, to the extent that they cited, or at least Wilborne, to the extent that it cited Gardner, didn't really offer any independent analysis. The problem as we see it begins and ends with the Gardner decision, because that is the encapsulation of what defendants argument represents. The problem with Hernandez is not in Hernandez itself, it's how Gardner used Hernandez to create this change evolving law. If you take a look at the Hernandez decision, they excused a defendant's untimeliness because of an evolution and a change in the law. But later on in that decision, or shortly thereafter, the Hernandez court recognized that this evolution, this change, was really a new rule. And that's all we're saying. We're not saying that laws don't change, that laws don't evolve, and there isn't some significance to it. But our position is that if the law changes to the extent that Strain changed the law in this case, that's a new rule. What these courts below have understood with respect to culpable negligence, when there's a citation to a later decided case, is it's only those cases that announce new rules that excuse a lack of culpable negligence. Because really, only cases that announce new rules would be unavailable to a defendant during a timely period. And afterwards, of course, he could take advantage of it, because it wasn't available to him at the time. By arguing that Strain announced a new rule, defendant is essentially admitting his own culpable negligence and is also admitting that the rest judicata bar should not be lifted. This court has called culpable negligence a conscious disregard for a conscious course of action in disregard for the consequences. That's actually what defendant did in this case. Likewise, this court has recognized that only novel laws will lift the rest judicata bar. Novel laws that were not in existence at the time that defendant had originally propounded this issue. Something unavailable to him. That's not what he's arguing with respect to culpable negligence and rest judicata. This evolving law concept, this changed law concept that he's crafted, doesn't exist anywhere in this court's case law. It doesn't exist anywhere in the United States Supreme Court case law. He relies heavily on the decision in Moore, and he said that in Moore it changed the law. Nowhere in this court's Moore decision when it was dealing with the Kilpatrick decision as to whether that was going to be retroactive or not, nowhere did Moore's Moore decision in Moore call Kilpatrick a change. In fact, it called Kilpatrick a clarification. It said that Kilpatrick has been the law for 20 years. And it also said that Kilpatrick had relied on Supreme Court precedent, North Carolina versus Pierce, and even a statute. So defendant's comparison of his instant case to this court's decision in Moore with respect to Kilpatrick does not work at all for him. In fact, it actually harms his position. Defendant's evolution of the law, change in the law concept as legally significant and distinct from new law is a self-serving creation of fiction, which adds confusion, distorts retroactivity law, and renders finality of judgment a nullity. There is no definition that defendant has provided of this changed law, evolved law concept. And that's because it's definitionless. That's what the law does. It evolves every time a decisional case comes down from a court on a new set of facts. So what defendant has done is created a characterization of something that happens daily that will allow defendants not only to take advantage of it and apply it retroactively, but also allow it to excuse all untimely filings and lift the rest judicata bar. This erases finality of judgment from the equation, and we would strongly, strongly urge this court to follow the analysis of the appellate court below insofar of its rejection of this principle. As an absolute final matter, Your Honors, assuming that strain is retroactive, and even assuming that we get to apply it to defendant's case and lift the preclusion doctrines, this is not a strain case. This is not a gang bias case where that evidence was integral to trial. By comparison to the strain case, the instant cases gang evidence pales. In this case, there was multiple witnesses, ten witnesses for the state. One witness mentioned a statement attributable to the defendant about BD business being the reason for the shooting. There was no mention of the word gang in opening statement. There was just this one witness's discussion of what defendant told him that went to motive. And there was only brief mentions at closing argument. The rest of the instant trial was on credibility. There were pictures, but those pictures were also of the scene. And during closing argument, the prosecutor mentioned that that's BD and GD, that's what this is, the business. It was a reiteration of the victim's testimony, Your Honor. But again, it's our position. It may well have been, Your Honor, but it is our position that this is not a gang case insofar as the jury was exposed to multiple gang witnesses where the evidence of gang membership impacted on credibility. In fact, the credibility contest in this case did not involve any mention of gangs. And to the extent that defense counsel indicates that the gang component of this trial impacted credibility, that's a misinterpretation of the record. The defense alibi witnesses indicated that they recalled the events with clarity, despite the fact that it was months afterwards that they learned the defendant was arrested for the offense. They argued that they remembered it because they had heard shooting that day. But on cross-examination, they were asked and agreed that they'd heard shooting before. So the prosecutor's intent in questioning them about shooting in the building before was not about gangs. There was no gang inference drawn from that evidence. That evidence was used to attack the such precise recall of an event that really wasn't singularly identifiable for these witnesses, because they had heard shooting before. So what was the motive, did the court say? It was a jury trial, and our arguments established that it was somehow gang motivation. There was no, there was actually no evidence. Your arguments were alluding to that it was gang motivation. That's all we used it for, yes. And it was actually very peripheral, because this was, the motive wasn't explained other than, you know, this is maybe a gang shooting. There was no evidence, by contrast to the evidence in Strain, there was no evidence about gang rivalries. There was no evidence about gang wars. There was no evidence about which gang was arrayed against another gang or aligned with another gang. There was not even evidence that defendant was a gang member. In fact, on direct appeal, defendant even argued that there was no evidence that defendant was a gang member when he complained about a sentencing issue. Irrespective of whether Strain sets the ceiling or the floor with what we can define as evidence of gangs integral to trial, the instant case falls far below it. And for that reason, substantively, Strain should not apply. But ultimately, Your Honors, what we are asking for from this court is a ruling that indicates that Strain announced a new rule, and therefore, it cannot apply retroactively to court. And in addition to cases on collateral review, we are also asking this court to once and for all eliminate this notion, this amorphous, nebulous, dangerous notion of changed or evolved law that can erase finality of judgment from the equation. Thank you. Thank you, counsel. I'd like to just address a couple of points that counsel raised during her argument. First, this idea that of evolving law. On the one hand, counsel says that there's no such thing as evolution of the law, but then she says a few minutes later that every time there's an evolution of the law, and every time the court makes a decision, there is some evolution. And I think that's all we're saying on behalf of Mr. Saunders, that every time the court announces a ruling, it doesn't amount to a new rule of constitutional criminal procedure, per tee. That sometimes, in rare instances, the court, as in Moore, as in related to Kilpatrick, has a new rule of constitutional criminal procedure, per tee. It doesn't change the practice that had existed before, but as this court said in People v. Moore, it didn't amount to a new rule of constitutional procedure. We're asking this court to provide that same principle that she did in Moore to String, because we think the cases are similarly situated. As it relates to finality, we as judges and lawyers like finality, and finality is important. But finality is not the end all, be all. On the other side of finality is justice, is fairness, and if we wanted finality, we wouldn't have a Post-Conviction Act. We just say direct appeal and that's it. We provide a Post-Conviction Act to contest final judgments on appeal, precisely because we think, as judges and lawyers, that where constitutional protections have been violated, we want to provide defendants an opportunity to contest those final convictions. So we're not asking for anything, I don't think, out of the ordinary. The last point is this idea that gang evidence was marginal in this case. The prosecution in its opening statement says that Sanders told him it was about BD business, it was not his business. That's in the opening statement of the trial. Later, during the testimony of Mr. Stewart, the evidence was introduced that the shooting was BD business, the shots weren't meant for my brother, Sanders was always with other guys, he has heard of BDs all the time in the building and on the streets. The term BD means Black Disciples of Street Gang. In closing argument, the prosecutor repeatedly refers to BD business as the motive for an otherwise inexplicable shooting. He refers to the graffiti on the walls, BD lives, GD dies. Now, I don't think the prosecutor was referring to the graffiti on the wall as some sort of commentary on folk art in public housing. The comment was BDs lives, GDs dies refers to the Black Disciples and Gangster Disciples rivalry in public housing. Was there any testimony, though, that the defendant was a gang member? Testimony of the, no. Just argument. No testimony. They argued he was a gang member? BD business is also evidence of identification. This is the prosecutor in closing argument, stating that what the defendant said is that he not only knows who did the shooting, but he is the only person that could know it is BD business. Now, what is the inference to be drawn from that statement? That he's a gang member and that he's involved in Black Disciples business? The context, I think, is important because this was not one of these, as the appellate court noted, it was a close case. It was not an overwhelming case. It was not a substantial amount of physical or forensic evidence. It was a one eyewitness case from a seven-year-old who had but a glimpse to see the shooting, according to the direct appeal. Contrast that with this inherent and deep and bitter widespread, perhaps justified, hatred and prejudice against gangs, and we have a very volatile situation. That could have been solved by the trial court asking one or two questions of the jury panel about gangs in the United States. And by utilizing gang evidence to ensure that this prejudice was not part of the jury process. Thank you.